The **UNITED STATES** of America, Plaintiff-Appellee,

v.

**Roy PINNA, Defendant-Appellant.**
No. 11499.

United States Court of Appeals Seventh Circuit.
Jan. 26, 1956.

Myer H. Gladstone, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill. (Anna R. Lavin, Edward J. Calihan, Jr., Asst. U. S. Attys., Chicago, Ill., of counsel), for appellee.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This case had its origin in a three-count indictment returned against the defendant, Roy Pinna, and one Frank P. Coduto. Count 1 charged the purchase of 755 grains of heroin in violation of 26 U.S.C.A. § 2553(a); count 2, the sale of 755 grains of heroin to Harry V. Mattera in violation of 26 U.S.C.A. § 2554(a), and count 3, the receiving, concealing, buying and facilitating the transportation and concealment of 755 grains of heroin in violation of 21 U.S.C.A. § 174. The offense charged in each of the counts was alleged to have occurred on or about September 18, 1953. Prior to trial, the death of Coduto was suggested and the indictment dismissed as to him. The jury found the defendant not guilty on counts 1 and 2, and guilty on count 3. From a judgment predicated upon the finding on count 3, defendant appeals.

The principal issues argued for reversal are that the court erred (1) in its refusal to direct a verdict in favor of the defendant or a judgment notwithstanding the verdict or, in the alternative, a new trial; (2) in its denial of defendant's motion for mistrial; (3) in its denial of defendant's motion for a view by the jury of certain premises referred to by government's witnesses, and (4) in permitting the introduction of evidence of a previous conviction of the defendant offered for the purpose of impeachment.

We need not cite cases for the oft repeated rule that an appellate court must consider the evidence in the light most favorable to the government on the issue as to whether the case was properly submitted to the jury. With that rule in mind, we shall briefly refer to the facts and circumstances as developed by the government's proof. On the evening of September 18, 1953, at about 7:30 p. m., Coduto met Mattera, a Treasury enforcement officer, at the College Pharmacy, located at Van Buren and Paulina Streets, Chicago, Illinois. While the two occupied a rear booth, Mattera gave Co-

duto $800.00. About 9:15, Coduto, after making a telephone call, left the pharmacy. Mattera remained there for some 45 minutes, then went to Pixley and Ehlers Restaurant located on the northwest corner of Ogden Avenue and Madison Street. Durkin, another Treasury enforcement officer, observed that Coduto upon leaving the pharmacy entered his 1953 Buick and drove to the University Restaurant, 1826 West Harrison Street, where he met the defendant, Pinna. The two sat at the counter together, during which time Pinna made a telephone call. Shortly thereafter, Coduto drove off in his car, and some 5 minutes later the defendant left in a green 1947 Dodge coupe, bearing a license number disclosing that the car was registered in his name. Coduto's car was seen by Durkin parked at Van Buren and Paulina Streets at about 10 p. m. Durkin also saw the green Dodge coupe twice, being driven in the same neighborhood. About 11 p. m. Durkin saw Coduto park his car and enter Pixley and Ehlers Restaurant. Mattera was in the restaurant, saw Coduto enter and nodded to him. Coduto left the restaurant and entered the green Dodge. At that time he had no newspaper in his hand. Durkin then walked a short distance to the St. Nicholas Hotel, where he saw defendant's Dodge parked in front of the hotel, with Coduto sitting on the right side of the front seat. Durkin saw Coduto counting money on the seat of the car while facing the driver at his left, but was unable to identify the person sitting on the driver's side. He then stepped into the entrance of the hotel, about 15 feet from the curb, and from this point recognized defendant as the driver of the Dodge. Coduto got out of the Dodge and walked to the Pixley and Ehlers Restaurant with a newspaper under his arm. In the meantime, the Dodge coupe had been driven away. In the restaurant, Coduto met Mattera in accordance with a previous arrangement and handed Mattera a folded newspaper in which were two glassine bags containing a white substance later shown to be heroin. Thereupon, Coduto left Mattera and drove off in his car.

It is true, of course, that there is no direct proof that defendant received, concealed, bought or facilitated the transportation of unlawfully imported narcotics with knowledge that they were imported contrary to law, as charged in the third count of the indictment. The circumstances in proof, however, lead to the inescapable conclusion that the defendant and Coduto were operating together for the purpose of obtaining narcotics for Mattera and that as a result the heroin described in the indictment was delivered by the defendant to Coduto in the car of the former while parked in front of the St. Nicholas Hotel and that the defendant at that time was paid money by Coduto. It is hardly open to doubt but that the heroin which was delivered by defendant to Coduto in the parked car in front of the St. Nicholas Hotel was shortly thereafter delivered by Coduto to Mattera in conformity with a previous arrangement and for which Coduto had previously been paid.

Based upon certain discrepancies in the government's proof which we need not relate, together with the alibi testimony that defendant was not in or any place near the neighborhood of the occurrence on the evening in question, defendant argues with some plausibility that this is a case of mistaken identity. That argument no doubt was made to the jury, and properly so, but the doubt having been resolved against the defendant, it is of no benefit to him here. Defendant also argues that the statutory presumption of unlawful importation with knowledge of such on the part of the defendant is not available to the government because there was no direct proof of possession by the defendant. We know of no reason, however, why possession proven by circumstantial evidence should be treated any differently from possession proven by direct evidence. In any event, this same theory was advanced and rejected by this court in United

States v. Pisano, 7 Cir., 193 F.2d 355, 360, 31 A.L.R.2d 409.

We have related sufficient of the facts, so we think, to show that the case was properly submitted to the jury; in fact, the government's proof, if believed, as was the jury's right, discloses a convincing case against the defendant, and this notwithstanding the fact that it was circumstantial.

Defendant's motion for mistrial was based upon an article which appeared in a Chicago newspaper which stated among other things, "He (Pinna) is accused of being a member of West Side dope ring rounded up by Federal Agents March 16, 1954." When the matter was called to its attention, the court followed the procedure approved by this court in the Pisano case. It is unfortunate, of course, that newspapers persist in making derogatory statements relative to a defendant involved in a criminal prosecution. Following the reasoning of this court in Pisano, however, we hold that the motion for mistrial was properly denied.

Defendant's contention that the court abused its discretion in denying defendant's request that the jury be permitted to view and inspect the situation in front of the St. Nicholas Hotel, as testified to by Durkin, is without merit. The reasoning appears to be that such a view or inspection would have disclosed that it was impossible for Durkin to have seen and identified the defendant in the Dodge coupe parked in front of the hotel. It seems to us that too many uncertain factors were involved to have made such view or inspection of any value. In any event, there certainly was no abuse of discretion in the court's refusal to convene the jury at 11 o'clock at night in front of the hotel for the purpose of viewing a Dodge coupe parked at the curb, even under circumstances similar to those testified to by Durkin.

Defendant also argues that the court erred in allowing cross-examination of the defendant concerning a prior conviction. Defendant took the stand in his own behalf and on cross-examination the government was permitted to establish that he had been convicted of rape in the Criminal Court of Cook County in 1935, almost twenty years previously, and when he was 21 years of age. We must admit that it strikes us as a far fetched idea that a conviction for rape would have any bearing or relation to a man's veracity or credibility, particularly twenty years later. However, the rule appears to be firmly established in federal courts that the matter of the admission of such testimony is solely within the discretion of the trial judge. Rinella v. United States, 7 Cir., 60 F.2d 216, 218; United States v. Empire Packing Co., 7 Cir., 174 F.2d 16, 20; Goddard v. United States, 5 Cir., 131 F.2d 220, 221. See also a case relied upon by the defendant, Sinclair Refining Co. v. Southern Coast Corp., 5 Cir., 195 F.2d 626, 629. In any event, the testimony was admitted without objection on the part of defendant's counsel; in fact, the record indicates that he acquiesced in its admission. The issue, therefore, has not been properly preserved for review.

Defendant also complains that the impeachment testimony having been offered, the court erred in restricting his right to testify relative to the details connected with the crime for which he had been previously convicted. Again we think the extent to which the defendant was entitled to testify on that score was a matter within the discretion of the court.

The judgment appealed from is

Affirmed.

FINNEGAN, Circuit Judge.

I concur in the result. See: United States v. Aman, 7 Cir., 1954, 210 F.2d 344, 349.