# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1998 SESSION

FILED

January 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9610-CR-00350 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. JOSEPH B. DAILEY, |
| TORRANCE JOHNSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |

**FOR THE APPELLANT:**

**A.C. WHARTON, JR. (Of Counsel)**
Shelby County Public Defender

**RONALD S. JOHNSON (Trial)**
Assistant Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

**EDWARD G. THOMPSON (Appeal)**
Assistant Public Defender
212 Adams Avenue
Memphis, TN 38103

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**KENNETH W. RUCKER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**PHILLIP GERALD HARRIS**
**TERRELL L. HARRIS**
**DAVID C. HENRY**
Asst. District Attorneys General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

## OPINION

The defendant, Torrance Johnson, appeals as of right his conviction for aggravated robbery. He was sentenced as a Range I, Standard Offender, to twelve (12) years incarceration. On appeal, he presents five (5) issues for our consideration:

(1) whether the evidence is sufficient to support the verdict;

(2) whether the trial court erred in ruling that, if defendant chose to testify, the state could impeach him by inquiring on cross-examination if he had been convicted of an unnamed felony;

(3) whether the trial court erred in admitting into evidence a sketch of the suspect made in the course of investigating the robbery;

(4) whether the trial court erred in failing to charge the jury on voice identification; and

(5) whether the trial court erred in charging the jury that the law presumes that every witness is "sworn to the truth."

After a thorough review of the record, we find no error. Therefore, the judgment of the trial court is affirmed.

## FACTS

At approximately 8:20 p.m. on January 20, 1994, Nedra Smith[1] pulled her car into the parking lot of Boatman's Bank on Elvis Presley Boulevard in Memphis. She left her car running while she went inside the ATM building. As she was approaching the ATM, she saw two men running. One man told the other one to get in the car, and Smith turned to see what car they were referring to. When she turned, she saw one man getting into her car and the other approaching her in the ATM building. The man in the ATM was wearing jeans, a black jacket and a sweatshirt with the hood pulled over his head. His face was not covered. Smith identified this man at trial as the defendant.

Defendant brandished a weapon and said, "[g]ive me two hundred dollars,

---

[1] Smith had married between the time of the crime and the trial. Her married name was "Morgan." For purposes of clarity, we will refer to the victim as "Smith."

or I'll kill the baby."[2]  Smith attempted to retrieve $200 from the machine, but was unsuccessful.  She then turned around and told defendant that she could not get that much out of her account.  Defendant answered, "[y]ou look at me again, I'll kill you."  Smith was ultimately able to retrieve $50, which she gave to defendant.  Defendant then jumped in the backseat of Smith's car and the two men drove away.

Smith's car was located the next day approximately one and one-half miles from the Boatman's Bank ATM.  Several items were missing from her car including a coat, the child car seat, a purse, a wallet, shoes and credit cards.  The police were not able to obtain any fingerprints from the vehicle.

Subsequently, Smith assisted the police in drawing a sketch of the man who robbed her.  She was also asked to view a line-up of men who fit the description of the suspect.  However, she was not able to identify anyone as the perpetrator of the crime.

On March 11, Memphis Police Officer Alan J. Pinnow interviewed the defendant in connection with this crime.[3]  When asked his whereabouts on the date and time of the robbery, defendant responded that he was working that night.  Officer Pinnow called to confirm this information, but defendant's employer had no record of him working on January 20.  Defendant then told Pinnow that he was at a clinic being treated for pneumonia.  He also said that he was at home during the time in question.

Defendant was asked to participate in a line-up.  Smith initially noticed that two men resembled the man who robbed her.  The defendant was one of these men.  However, when all of the men in the line-up were asked to repeat the phrase, "give me two hundred dollars, or I'll kill the baby," Smith recognized the defendant's voice.  She then identified defendant as the perpetrator.

When Pinnow advised defendant that he was picked out of the line-up,

---

[2] Smith had a child's car seat in the back seat of her car.  Fortunately, her child was not in the car at the time.

[3] Pinnow testified at trial that he questioned defendant after he noticed that defendant resembled the sketch drawing of the suspect.

defendant responded that he knew he was going to be picked.

The jury found defendant guilty of aggravated robbery. The trial court sentenced him to twelve (12) years incarceration as a Range I, Standard Offender. From his conviction, defendant brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, the defendant challenges the sufficiency of the convicting evidence. He contends that the victim's identification of defendant is unreliable in that she had little time to see defendant's face during the robbery and was only able to identify him after hearing his voice. Therefore, he claims that the evidence is insufficient to sustain the jury's finding of guilt.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

In the case *sub judice*, the victim positively identified defendant not only at

4

the physical line-up but also at trial. The identification of a defendant as the person who committed the offense is a question of fact for the jury to determine. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The testimony of the victim identifying the defendant as the perpetrator of the crime is sufficient, in and of itself, to support a conviction. Id. Moreover, the defendant gave differing versions of his whereabouts on the subject night in an attempt to establish an alibi. This is circumstantial evidence from which the jury could infer defendant's guilt.

This issue is without merit.

## IMPEACHMENT ON UNNAMED FELONY

Defendant next contends that the trial court erred in ruling that the state could impeach defendant, if he chose to testify, by inquiring on cross examination if he had ever been convicted "of a felony without the nature of the felony being revealed to the jury." *See* State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995). However, our review of the record reveals no such ruling. The trial court ruled that the state could impeach defendant with prior felony convictions for selling a counterfeit controlled substance and criminally negligent homicide. Therefore, this issue is without merit.[4]

## ADMISSIBILITY OF SKETCH

In his next issue, defendant asserts that he was denied his right to

_____

[4] Furthermore, in State v. Abraham Galmore, C.C.A. No. 02C01-9607-CR-00230, Shelby County (Tenn. Crim. App. filed September 9, 1997, at Jackson), this Court held that in order for a defendant to be successful on appeal based upon a trial court's ruling on the admission of prior convictions, two prerequisites must be met: (1) defendant must establish that he did not testify because of an unfavorable ruling on admissibility of a prior conviction, and (2) defendant must make an offer of proof as to the proposed trial testimony so that the appellate court can assess the impact of the trial court's ruling. Defendant has established neither requirement.

confrontation by the introduction of a police sketch drawing of the robbery suspect. He argues that because the sketch was introduced through the testimony of the victim, he was denied his right to confront the sketch artist. He further claims that the state did not lay a proper foundation for its introduction into evidence.

We initially note that defendant has waived this issue by failing to object to the introduction of the sketch at trial. Tenn. R. App. P. 36(a). The issue is also waived due to defendant's failure to include it in his motion for new trial. Tenn. R. App. P. 3(e); *see* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995).

Furthermore, the issue has no merit. The preparer of the sketch need not testify at trial as long as the exhibit is identified as being a fair and accurate representation. The victim assisted the artist in drawing the sketch of the suspect. She testified at trial that the sketch introduced into evidence was that which was made in conjunction with her description. We find this situation to be closely analogous to a witness authenticating a photograph even though he or she was not the photographer. *See* N. Cohen, D. Paine & Sheppeard, Tennessee Law of Evidence, § 401.11 (3d ed. 1995). Smith had personal knowledge of the subject matter and authenticated the drawing as the sketch of the suspect of the robbery. Furthermore, defendant was afforded the opportunity to cross-examine Smith on the accuracy of the sketch. *See* State v. Miklos Jusino Holley, C.C.A. No. 02C01-9112-CR-00280, Shelby County (Tenn. Crim. App. filed February 3, 1993, at Jackson).

We find no violation of defendant's right of confrontation.


## VOICE IDENTIFICATION JURY INSTRUCTION


Defendant also argues that the trial court erred in failing to instruct the jury on voice identification. He contends that because the victim was able to positively identify the defendant only after she heard his voice, the voice identification was crucial to the jury's determination. Therefore, he insists that the trial court should have instructed the jury on factors to consider in determining if the victim's identification of the defendant's voice was reliable.

6

However, the defendant made no special request for a "voice identification" charge at trial. Moreover, defendant did not object to the identification instructions submitted to the jury and failed to raise this issue in his motion for new trial. Thus, the issue is waived. State v. West, 844 S.W.2d 144, 151 (Tenn. 1992); State v. Kendricks, 947 S.W.2d 875, 885 (Tenn. Crim. App. 1996). Furthermore, the general instructions given to the jury were adequate. *See* State v. Forbes, 918 S.W.2d 431 (Tenn. Crim. App. 1995).

This issue is without merit.

## PRESUMPTION OF TRUTH JURY INSTRUCTION

In his final assignment of error, defendant urges that the trial court erred in instructing the jury that every witness is presumed to tell the truth. He contends that this instruction deprived him of his constitutional right to the presumption of innocence.

This Court has previously held that an instruction that the law presumes that every witness is sworn to the truth is constitutionally sound. Lundy v. State, 752 S.W.2d 98, 104 (Tenn. Crim. App. 1987); State v. Glebock, 616 S.W.2d 897, 906 (Tenn. Crim. App. 1981). This issue has no merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**

_____
**JOE B. JONES, PRESIDING JUDGE**



_____
**PAUL G. SUMMERS, JUDGE**